417 A.2d 620

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Robert George TIMKO, Jr., Appellant.**

Supreme Court of Pennsylvania.

July 24, 1980.

---

**6.** Our conclusion applies to all the school years in question, including 1967–68.

Alan Ellis, Robert C. Fogelnest, Philadelphia, for appellant.

Robert F. Banks, First Asst. Dist. Atty., for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

EAGEN, Chief Justice.

In March 1975, appellant, Robert Timko, was tried by the Court of Common Pleas sitting without a jury in Lycoming County on charges of possession of marijuana with intent to deliver, possession of marijuana, possession of an unlicensed firearm, and disorderly conduct. Timko was found guilty of possession of marijuana and possession of an unlicensed firearm. After post-verdict motions were filed, judgment was arrested on the weapon charge, and a sentence of one year's probation was imposed on the possession conviction. The Superior Court affirmed the order,[1] and we granted Timko's petition for allowance of appeal.

The sole issue presented is the propriety of a search by police of the contents of a zippered valise seized from Timko's automobile[2] during the following sequence of events:

While driving a police vehicle during the early evening on September 16, 1974, Officer Williams of the Williamsport Police Department observed Timko operating a Volkswagen van in an erratic manner. While making a turn, Timko's van almost struck one vehicle, then drifted across the center line nearly striking Officer Williams' vehicle. As he passed Officer Williams' car, Timko looked out of an open window in his vehicle and directed an obscene gesture at him. The policeman turned and pursued Timko intending to arrest

1. *Commonwealth v. Timko*, 251 Pa.Super. 442, 380 A.2d 861 (1977). Spaeth, J., filed a dissenting opinion, joined by Hoffman, J.

2. Timko sought to suppress the evidentiary fruits of the search. The trial court denied the motion to suppress.

him for reckless driving. Moments later, Timko parked his van but struck vehicles to the front and rear of his own in the process. When Officer Williams approached Timko on foot, Timko rolled up his window and locked himself inside the van. When requested to show his license and registration, he responded with an obscene refusal. Officer Williams observed several boxes marked "shotgun shells" in the van and returned to his police vehicle to call for assistance.

Soon, other police officers arrived at the scene. Timko continued his refusal to tender identification except for momentarily flashing a card in the window in such a manner that the officers were unable to read it. After addressing further obscenity to the policemen, Timko started the motor of his van. While he was attempting to pull out of the parking space, police officer Jett was trying to pry open the van door using a tire iron. As Officer Jett pried, Timko looked at him and then reached for a zippered brown valise sitting atop another article in the back seat of the van. Having seen boxes marked "shotgun shells" in the vehicle and suspecting Timko was reaching for a weapon in the valise, Officer Jett smashed the van window open with the tire iron. Within a short period of time, he unlocked the door, helped pull Timko from the van, and retrieved the brown bag. Before being led away to the police car, Timko was frisked and handcuffed while standing next to the driver's seat door of the van. While this was happening, the police opened and searched the seized brown valise. It contained two packages of marijuana with a total weight of five hundred and forty-five (545) grams and a loaded revolver.

■ Timko maintains the fruits of the warrantless search of his zippered valise should have been suppressed. We agree.

"In the ordinary case, . . . a search of private property must be both reasonable and performed pursuant to a properly issued search warrant. The mere reasonableness of a search, assessed in the light of the surrounding circumstances, is not a substitute for the judicial warrant required under the Fourth Amendment."

*Arkansas v. Sanders*, 442 U.S. 753, 758, 99 S.Ct. 2586, 2590, 61 L.Ed.2d 235 (1979) (citation omitted). Against this strong preference for having the justification for and scope of a search reviewed by a neutral judicial officer, stand "a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (footnote omitted). In this case, the Commonwealth urges the search of Timko's zippered bag did not require a warrant because it was a search incident to arrest;[3] a search conducted to protect the safety of the officers;[4] a search of a mobile automobile;[5] or, an inventory search of an automobile.[6] We shall discuss these contentions *seriatim*.

A police officer may conduct a search of an arrestee's person and the area within an arrestee's immediate control as a matter of course because of the ever-present risk in an arrest situation that an arrestee may seek to use a weapon or to conceal or destroy evidence. *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Chimel v. California*, supra. However,

> "[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."

*United States v. Chadwick*, supra, 433 U.S. at 15, 97 S.Ct. at 2485. In such a situation, absent exigent circumstances, a

3. See *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

4. See, e. g. *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

5. See *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

6. See *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed. 1000 (1978).

38

warrantless search of luggage or other personal property in which a person has a reasonable expectation of privacy is not permissible.

██ In the case before us, the trial court found that Timko was standing beside his van, on the driver's side, being frisked when the brown bag was seized. Regrettably, the record is unclear about the exact sequence of events surrounding the search, but it does strongly suggest that Timko was under the control of the police officers, possibly handcuffed, at the time of the search and that the bag was under the exclusive control of the police officers at the time of the search. On this record, the Commonwealth has not established the search was incident to an arrest. Cf. *Commonwealth v. Long*, 489 Pa. 369, 414 A.2d 113 (1980).

The Commonwealth asserts the exigencies of the situation were such that an immediate search was necessary to protect the safety of the officers. While the events leading up to the search were such as would lead a reasonable policeman to believe the zippered bag might contain a weapon, nothing further occurred to justify an immediate warrantless search. For example, there is no suggestion the bag contained explosives or some other item which might in some way endanger the police officers or others, nor is there a suggestion the bag or its contents were in danger of concealment or destruction.

 The Commonwealth argues the location of the zippered bag in a motor vehicle made it subject to the so-called "automobile exception" to the requirement for a search warrant. *Chambers v. Maroney*, supra. That exception is based on the inherent mobility of automobiles with consequent practical problems in obtaining a warrant and on the diminished expectation of privacy which is accorded automobiles because of their open construction, their function, and their subjection to a myriad of state regulations. *United States v. Chadwick*, supra. In the case of luggage, no such considerations operate to diminish the citizen's expectation of privacy. A piece of luggage is not mobile once it is taken into police custody, and it is ordinarily a place in which

personal belongings are stored or transported. *Arkansas v. Sanders*, supra. Thus, a zippered valise, analogous to personal luggage, may not be searched without a warrant simply because it has been seized from an automobile.

■ Finally, the Commonwealth argues the search of the valise was similar to an inventory search which could have been performed at a later time. This argument is without merit. See *Commonwealth v. Brandt*, 244 Pa.Super. 154, 366 A.2d 1238 (1976); *United States v. Markland*, 489 F.Supp. 932 (D.Conn.1980).

■ A party asserting an exemption from the requirement for a search warrant bears the burden of establishing his actions come within the exemption. *Arkansas v. Sanders*, supra; *Chimel v. California*, supra; *Commonwealth v. Dussell*, 439 Pa. 392, 266 A.2d 659 (1970). In this case, the Commonwealth has not met that burden.

The order of the Superior Court is vacated, the order of probation is set aside, and a new trial is granted.

LARSEN, J., filed a dissenting opinion in which KAUFF-MAN, J., joins.

LARSEN, Justice, dissenting.

I dissent. I believe there exist several compelling justifications for upholding the validity of the seizure and search of appellant's valise and the admissibility of the contents of that valise. I would therefore affirm the order of the Superior Court.

The majority opinion states "*absent exigent circumstances, a warrantless search of luggage or other personal property in which a person has a reasonable expectation of privacy is not permissible.*" (Emphasis added.) While I have no fundamental quarrel with this statement of the law, I think the application of that law mandates the admissibility of the contents of the valise. Not only are "exigent circumstances" present, but it is my firm conviction that appellant could not have had a reasonable or legitimate expectation of privacy in his valise under the circumstances of this case.

The fundamental purpose of the Fourth Amendment is to safeguard individuals from unreasonable governmental invasions of legitimate expectations of privacy. *Rakas v. Illinois,* 439 U.S. 128, 142–143, 150–151, 99 S.Ct. 421, 430, 434, 58 L.Ed.2d 387 (1978); *United States v. Chadwick,* 433 U.S. 1, 7, 11, 97 S.Ct. 2476, 2481, 2483, 53 L.Ed.2d 538 (1977). Therefore, the threshold inquiry is whether or not any legitimate expectations of privacy have been invaded—if not, the protections of the Fourth Amendment are not triggered. *Rakas v. Illinois, supra,* 99 S.Ct. at 429, 430.

A legitimate expectation of privacy by definition means more than a subjective expectation that evidence will not be discovered, it means an expectation which society is prepared to recognize as reasonable. *Rakas v. Illinois, supra,* 99 S.Ct. at 430–31, n.12, citing *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516–517, 19 L.Ed.2d 576 (1967). "Legitimation of expectations of privacy by law must have a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law *or to understandings that are recognized and permitted by society.*" *Rakas v. Illinois, supra,* 99 S.Ct. at 431 n.12 (emphasis added). Indeed, in a case relied upon by the majority, *Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the United States Supreme Court recognizes "[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature *cannot support any reasonable expectation of privacy* because their contents can be inferred from their outward appearances." (Emphasis added.) *Id.,* 442 U.S. 764–765, n.13, 99 S.Ct. 2593, n.13. Surely such reasoning is applicable to the instant situation.

Appellant exhibited bizarre anti-police behavior which included locking himself in his van and reaching for the brown valise in an offensive and aggressive manner. The policemen reacted to this danger by correctly and reasonably interpreting appellant's behavior as going for a weapon in

the valise (they had observed several boxes of shotgun shells in the van). Such behavior of appellant removed whatever legitimate expectations he may have had regarding the privacy of the valise and its contents. Under these circumstances, I would hold that appellant did not have a "legitimate expectation of privacy" that was protected by the Fourth Amendment. *See Rakas v. Illinois, supra,* 99 S.Ct. at 430–31, n.12 ("On the other hand, even a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon. [citations omitted].")

The factual matrices of both *United States v. Chadwick, supra* and *Arkansas v. Sanders, supra,* are worlds apart from that presented herein. In those cases, the items seized and then searched without warrants were items of personalty in which there reposed a legitimate expectation of privacy and to which the respective defendants exhibited no unusual behavior that would remove those expectations of privacy. (*Chadwick* involved a double-locked footlocker taken from a train station; *Sanders* involved suitcases taken from an airport. In both cases, the defendants had been under surveillance and were arrested for drug offenses while leaving the train station/airport respectively, and they demonstrated no other unusual behavior, criminal or otherwise.) Thus, the imprimatur of the Fourth Amendment was firmly stamped upon those items.[1] In the instant case, while the imprimatur of the Fourth Amendment was initially stamped upon appellant's valise, it was cancelled by his behavior toward that valise and the arresting officers.

Even assuming, for the sake of argument only, that legitimate expectations of privacy did exist in the valise, I

1. In *Chadwick,* the Court stated: "In this case, important Fourth Amendment privacy interests were at stake. By placing personal effects inside a double-locked footlocker, respondents manifested an expectation that the contents would remain free from public examination. No less than one who locks the doors of his home against intruders, one who safeguards his personal possessions in this manner is due the protection of the Fourth Amendment Warrant Clause." 433 U.S. 11, 97 S.Ct. 2483.

believe there were exigent circumstances justifying its warrantless search. First, I believe the search of the valise *was* a search incident to a lawful arrest well within the parameters of that exception as defined by the decisions of the United States Supreme Court. The majority quotes the following holding from *United States v. Chadwick, supra*, 433 U.S. at 15, 97 S.Ct. at 2485.

> Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest.

While this quote supports the majority's position, I believe that when it is considered in reference to the facts of *Chadwick*, and in light of other "search incident to arrest" cases of the United States Supreme Court, *Chadwick* does not impose the absolute prohibition against the type of police activity involved herein as the majority believes it does. In *Chadwick*, the owners of a footlocker were lawfully arrested without a struggle and the double-locked footlocker, which had been placed in the trunk of a parked vehicle, was seized and taken to the Federal Building. Approximately an hour and one-half hour later, the arresting federal agents opened and searched the footlocker, finding marijuana.

In the instant case, appellant reached for his valise to obtain a weapon. In rapid fashion, appellant was pulled from his van and subdued while another officer was removing the valise and examining its contents. The exact chronology is not clear, but what is clear is that the search occurred in *very* close proximity to the arrest, either simultaneously or quite shortly thereafter.

Thus, appellant's arrest is much closer to the facts of *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) than to those of *Chadwick*. Robinson was arrested for operating without a driver's license. The

arresting officer then searched Robinson's pockets, found a cigarette packet, and removed it from the pocket. Robinson was subdued and the officer had exclusive control over the packet. The officer then examined its contents. Robinson objected to the admission into evidence of the heroin found in the packet. The United States Supreme Court stated:

> A police officer's determination as to how and where to search the person of a suspect whom he has arrested is *necessarily a quick ad hoc judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search.* The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. *A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.* It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment. (Emphasis added).

Further, this Court has addressed "search incident to arrest" facts similar in important respects to those involved herein. In *Commonwealth v. Sharpe*, 449 Pa. 35, 296 A.2d 519 (1972), this Court considered the constitutionality of a warrantless seizure and search of a defendant's overnight bag. Appellant there was arrested on probable cause that he had committed a murder. Suspecting proof would be found in appellant's bag, the arresting officers asked to have it. Upon appellant's refusal, a struggle for the bag ensued which the officers won. Thereupon, an officer searched the tote bag at the scene of the arrest. The appellant challenged the validity of the seizure and search of the tote bag.

A unanimous court per Mr. Chief Justice Jones stated "[t]he arrest being lawful, it *necessarily follows* that the seizure of the challenged evidence [i. e., the bag and its contents] was also constitutionally valid as an incident thereto." 449 Pa. at 42, 296 A.2d at 523.

*Sharpe* is determinative—appellant's brown valise, and its contents, are admissible as the search was valid. The efficacy of *Sharpe* and *Robinson* has not been diminished by subsequent cases of this Court or of the United States Supreme Court. The difference between these cases and the *Chadwick/Sanders* cases are factual—but those differences are critical. As noted in *Sanders* "[c]ourts and law enforcement officials often find it difficult to discern the proper application of [Fourth Amendment] principles to individual cases, because the circumstances giving rise to suppression requests can vary almost infinitely. Moreover, an apparently small difference in the factual situation frequently is viewed as a controlling difference in determining Fourth Amendment rights." *Id.*, 99 S.Ct. at 2589. *See also, United States v. Edwards*, 415 U.S. 800, 808–809, 94 S.Ct. 1234, 1239–1240, 39 L.Ed.2d 771 (1974) (quoting with approval the First Circuit Court of Appeals in *United States v. DeLeo*, 422 F.2d 487, 493 (1st Cir. 1970) which stated: "While the legal arrest of a person should not destroy the privacy of his premises, it does—for at least a reasonable time and to a reasonable extent—take his own privacy out of the realm of protection from police interest in weapons, means of escape, and evidence.")

Finally, I believe the search in this case was necessary to protect the safety of the arresting officers. The majority opines:

The Commonwealth asserts the exigencies of the situation were such that an immediate search was necessary to protect the safety of the officers. While the events leading up to the search were such as would lead a reasonable policeman to believe the zippered bag might contain a weapon, nothing further occurred to justify an immediate warrantless search. For example, there is no suggestion

the bag contained explosives or some other item which might in some way endanger the police officers or others, nor is there a suggestion the bag or its contents were in danger of concealment or destruction. At 623.

I believe this places too great a burden on police officers, and totally fails to allow for reasonable measures to protect their safety. The point is the policemen *had no way of knowing what was in the valise*—all they knew was that Timko was going for the valise in an offensive and aggressive manner. That, coupled with his bizarre behavior, seems to me ample justification to permit the immediate search of the valise almost simultaneously with Timko's arrest. The bag could have held a handgrenade, a bomb, or, as it did prove to hold, a gun. I do not believe that policemen should be required to guess the nature of an aggressor's weaponry in such situations. Again, *Sanders* also left room for a decision based on this ground. In note 11, the United States Supreme Court states, "There may be cases in which the special exigencies of the situation would justify the warrantless search of a suitcase. *Cf. Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (police had reason to suspect automobile trunk contained a weapon.)" *See also, Texas v. White*, 423 US. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *United States v. Johnson*, 467 F.2d 630 (2d Cir. 1972) (officers had reason to believe suitcase held a loaded weapon—under these circumstances, immediate search permitted) and cases cited therein. The Fourth Amendment was never intended to extract a price as dear as the lives of law enforcement officers, nor has it been so interpreted. The majority's rationale provides inadequate considerations for the safety of police officers. I hope that, despite the result reached by the majority in this case, police officers will continue to exercise the reasonable quick action which the police exercised in this case . . . their lives may depend upon it.

KAUFFMAN, J., joins in this dissenting opinion.