449 A.2d 716

COMMONWEALTH of Pennsylvania

v.

Harry STEIN, Appellant,

**and**

COMMONWEALTH of Pennsylvania

v.

Richard A. DOLATA, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 14, 1981.

Filed Aug. 20, 1982.

Petition for Allowance of Appeal
Denied Dec. 23, 1982.

John F. Cambest, Pittsburgh, for appellants.

Stella Smetanka, Assistant District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WIEAND, JOHNSON and MONTEMURO, JJ.

JOHNSON, Judge:

In this appeal, Appellants raise issues concerning both the sufficiency of the probable cause for their arrest and the validity of the search and seizure of incriminating evidence.

We hold that probable cause existed for their arrest and that the search and seizure was valid.

The events leading up to the arrest of Appellants, Richard A. Dolata and Harry Stein (hereinafter Dolata and Stein), are rather unusual.

At approximately 6:00 a. m. on the morning of February 13, 1980, Anthony J. Perella, an off-duty Pennsylvania State Trooper, happened to look out the window of his home. He saw a Ford sedan being driven to a parked position without any headlights burning, even though it was still dark.

Trooper Perella knew the car was strange to the neighborhood because he was a ten-year resident and was familiar with the cars of the area. Because the car was unfamiliar and was being operated without the needed headlights, Perella telephoned his barracks and ran a check on the registration of the vehicle. He learned that the car was registered to Appellant Stein.

When Perella went out of his home to observe more closely, the vehicle was driven to another parked position on another street. The occupants, two white males unfamiliar to Perella, exited the car. As he walked past, the two re-entered the car and drove away. Perella then returned home and telephoned his friend, Officer Figura of the Pittsburgh Police Department, to report his observations. Officer Figura asked to be notified if Perella were to see the car again in the neighborhood.

Eight days later at 6:15 a. m., Trooper Perella again observed the Ford sedan, and again, the car was being operated without needed headlights. It was backing up and turning around. Perella immediately contacted Officer Figura who joined him at approximately 6:50 a. m.

Figura recognized the single occupant of the car as Appellant Dolata, who was personally known by him to have been involved in previous burglaries in the Pittsburgh area. The officers then saw Stein, who was carrying a suitcase, walk towards the parked car. Perella recognized Stein as one of the two men he had seen in the car eight days earlier. Stein

entered the car and put the suitcase in the back seat. The officers, feeling that some further action was necessary, pulled up in Figura's car, thereby blocking the passage of Appellants' vehicle. The officers exited their car with guns drawn and announced their identity as police officers. The men were ordered out of the car.

The record is not conclusive on the following course of events, but it appears that as Dolata was exiting from the driver's seat, he either intentionally or unintentionally knocked the gear shift into drive or he failed to properly engage the car in park. As a result, the Ford moved forward, struck Officer Figura and his car, and then drifted over an embankment until it came to a stop against a pole.[1]

After the two were patted down for weapons and placed in a prone position, Trooper Perella went to the car. He shut off the ignition, retrieved the suitcase, and joined Officer Figura. While Figura was guarding the Appellants, Perella began an investigation of the neighborhood. He then learned that the home of Henry Thomas had been forcibly entered. At that time, Appellants were more thoroughly searched. Gloves and fourteen pieces of jewelry were found on Stein's person. In the suitcase there were a heavy duty, foot long screwdriver and a police scanner set at the frequency for the No. 7 Police Station.

At the suppression hearing, the court found that the defendants had been lawfully arrested and the evidence of the crimes had been lawfully seized. Appellants appeared with counsel in a nonjury proceeding on June 2, 1980. They were tried jointly on six counts: (1) Burglary, (2) Theft, (3) Receiving Stolen Property, (4) Criminal Conspiracy, (5) Recklessly Endangering Another Person, and (6) Possession of Instruments of Crime. Both were found guilty of all but the fifth count of Recklessly Endangering Another Person. Post-trial motions were filed, argued, and denied on Febru-

1. Officer Figura believed at the time of the incident and at trial that Dolata deliberately put the Ford in gear with the intent of having it strike the officers or somehow interfere with their arrest. This led to the filing of a Recklessly Endangering Another Person charge.

ary 12, 1981. Appellants were sentenced to a term of total incarceration for a period of not less than one year nor more than five years. This appeal followed.

The issues specifically raised by Appellants are: (1) the arrest of the Appellants was unlawful in that it was neither made pursuant to a valid warrant nor based on probable cause; and (2) the evidence obtained as a result of the Appellants' unlawful arrest should be suppressed since it was obtained through the exploitation of the original illegality of the arrest and without a valid search warrant.

In asserting that no probable cause existed for their arrest, Appellants rely on the established principle which states that:

Whether a police officer has probable cause to arrest depends upon whether at the time of the arrest the facts and circumstances within the knowledge of the officer, or of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing a crime.

*Commonwealth v. Hayes*, 237 Pa.Super. 510, 513, 352 A.2d 121, 122 (1975); *Beck v. Ohio*, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Tookes*, 236 Pa.Super. 386, 344 A.2d 576 (1975).

Appellants contend that the only facts and circumstances within the knowledge of the officers at the time of the arrest were that Dolata and Stein had previous criminal records and that they had been seen in the neighborhood on a previous occasion. It is further contended that this is insufficient to establish probable cause.

A careful review of the record established that the officers were armed with more than the above-stated information. In addition to their being known to the officers as burglars, Appellants were also observed at a very early morning hour in a neighborhood in which Trooper Perella knew they did not live. In addition, their car was being operated without needed headlights. This is certainly enough to raise suspicion.

While Appellants are correct that mere suspicion is not sufficient for an arrest, see *Commonwealth v. Jones*, 457 Pa. 423, 322 A.2d 119 (1974), another well established principle provides that:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. [Citation omitted.] A brief stop of a suspicious individual in order to determine his identity or maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. [Citations omitted.]

*Adams v. Williams*, 407 U.S. 143, 145–146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–617 (1972); *Commonwealth v. Shoatz*, 469 Pa. 545, 554–555, 366 A.2d 1216, 1220–1221 (1976); *Commonwealth v. Ellis*, 233 Pa.Super. 169, 335 A.2d 512 (1975).

Therefore, before deciding whether probable cause existed at the time of the arrest, we must first determine when the arrest actually occurred. Appellants claim that the arrest, and not an "investigatory stop," occurred at the time when the police officers exited their car with their guns drawn. The Commonwealth, on the other hand, claims that only an investigatory stop occurred, and that the arrest occurred after the incident of the "wayward" car. The reason stated by the Appellants for their belief that an arrest occurred is based on the fact that the officers exited their car with guns drawn.

This is an incorrect assumption. The Pennsylvania Supreme Court recognizes two kinds of investigatory stops. One is merely approaching a person and addressing questions to him. *Commonwealth v. Jones*, 474 Pa. 364, 378 A.2d 835 (1977). The other is a "forcible stop," by either physical force or a show of authority, which restrains an individual's freedom. *Commonwealth v. Stewart*, 257 Pa.Super. 334, 390 A.2d 1264 (1978).

■ We believe that an investigatory stop occurred in the instant case. We further believe that it was reasonable for the officers to draw their guns, given the fact that the officers, without backup assistance, were about to stop two known felons who were acting in a most suspicious manner.

As we agree with the Commonwealth that the arrest occurred after the car rolled forward and struck Officer Figura and his car, we must determine if the facts and circumstances known to the officers were sufficient to warrant a reasonable man to believe that a crime had been committed or that criminal activity was afoot.

■ Given the already-stated prior knowledge possessed by the officers, coupled with the officers' justifiable belief that the car was intentionally put in gear as an evasive maneuver, we cannot say that the police had an unreasonable belief that criminal activity was afoot. In fact, the reasonable assumption that the car was deliberately placed in gear may have been sufficient in and of itself. Thus, we hold that sufficient probable cause existed for the arrest of the Appellants.

■ The second issue raised by the Appellants concerns the validity of the search and seizure of both the evidence found on Stein's person and the evidence in the suitcase.

As for the evidence found on Stein[2], the rule is clear:

> When a man is legally arrested for an offense, whatever is found upon his person or in his control which is unlawful for him to have, and which may be used to prove the offense, *may be seized and held as evidence in the prosecution.*

*Carroll v. United States*, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543, 553 (1925) (emphasis added); *See also, Commonwealth v. Spriggs*, 224 Pa.Super. 76, 302 A.2d 442 (1973).

Thus, as we have already determined that there was a lawful arrest, Appellants' contention that the evidence

---

**2.** This evidence consisted of 14 pieces of jewelry and gloves which were later identified by Henry Thomas, the victim of the burglarized house, as belonging to him.

found on Stein is "fruit of the poisonous tree" is utterly without merit.

The other evidence sought to be suppressed consisted of those items found in the suitcase seized from Appellant Stein's car.[3]

Over fifty-five years ago the Supreme Court of the United States, in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), recognized what has come to be called and accepted as the "automobile exception." Because of their highly mobile nature, cars are not subject to the same strict requirements of search and seizure as is an individual's home. *Chambers v. Maroney,* 399 U.S. 42, 50–51, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, 427–28 (1970); *Commonwealth v. Berman,* 262 Pa.Super. 410, 396 A.2d 1237 (1978). It is also recognized that there is a lesser expectation in the privacy of an automobile. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). It should be noted that the search of an automobile proceeds on a different theory than that justifying a search incident to an arrest:

> The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.

*Carroll v. United States,* 267 U.S. at 158–159, 45 S.Ct. at 287, 69 L.Ed. at 554; *Chambers v. Maroney,* 399 U.S. at 49, 90 S.Ct. at 1980, 26 L.Ed.2d at 427.

As the officers saw Stein, who was suspected of burglary, carrying the suitcase, it was reasonable for the officers to believe that the car's contents "offended against the law."

However, Appellants point out that while the contents were generally in the car, they were specifically in a closed suitcase. This, it is claimed, removed the evidence seized from the automobile exception.

---

3.  These items included 5 watches, 4 ladies' rings, a cameo necklace, a man's gold diamond ring, a pen light, and various amounts of coins. It should also be noted that the suitcase itself belonged to Mr. Thomas whose home had just been burglarized.

To support this claim Appellants rely on *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).[4] We believe that the situation in this case is distinguishable from that in *Chadwick*. In *Chadwick*, the footlocker containing the contraband was seized and then opened hours later in the Federal Building, after the arrestees had been placed behind bars. The Court found that the search could not be justified as incident to the arrest if remote as to time or place of the arrest. *U. S. v. Chadwick*, 433 U.S. at 15–16, 97 S.Ct. at 2485–2486, 53 L.Ed.2d at 550.

■ In the instant case, the search of the suitcase was not so remote as to time and place of the arrest that it could be said not to be contemporaneous with the arrest. The search occurred within moments of the arrest and in the immediate area. It should also be noted that it does not matter that the chance that the evidence in the automobiles may be destroyed or seized by the arrestees is remote, as long as it is possible. *U. S. v. Chadwick*, 433 U.S. at 14, 97 S.Ct. at 2485, 53 L.Ed.2d at 550.

■ Therefore, we hold that the search of the automobile was a proper search under both the automobile exception

4. Appellants also rely on *Commonwealth v. Timko*, 491 Pa. 32, 417 A.2d 620 (1980). In *Timko*, after police had forcibly restrained the arrestee, a brown valise on the seat of the vehicle was searched and seized without a warrant. The Court affirmed suppression of the evidence, a loaded revolver and two packages of marijuana, on the grounds that the search was not justified under either the automobile exception, or as a search incident to a lawful arrest. We need not decide whether *Timko* applies here, as the search in this case occurred some six months before *Timko* was decided. *Timko* applies prospectively only because, as the valise was lawfully seized, the requirements applying to the search are merely procedural. *See* note in *Commonwealth v. Berman*, 262 Pa.Super. 410, 396 A.2d 1237 (1978). Even if this were not the case, we are not certain of the weight to be accorded the *Timko* decision, given the holding of the Supreme Court of the United States in *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). In *Belton* it was unequivocally held that a lawful custodial arrest creates a situation justifying a contemporaneous search of an automobile and any compartments or containers, including luggage, therein found.

and the exception pertaining to searches incident to an arrest.[5]

Thus, for all the foregoing reasons, we affirm the judgments.

**5.** Following the preparation of this opinion, the Supreme Court of the United States held that the warrantless search of an automobile which, the police had probable cause to believe, contained contraband, may include all of the compartments and containers within the vehicle, even though the contents of the compartments and containers were not in plain view. *United States v. Ross*, —— U.S. ——, ——, 102 S.Ct. 2157, 2159, 72 L.Ed.2d 572 (6/1/82).