J-A05017-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :          PENNSYLVANIA
             Appellant           :
                                             :
                                             :
        v.                    :
                                             :
                                             :
ROBERT AUGUSTE                :     No. 1244 EDA 2022

Appeal from the Order Entered April 18, 2022,
in the Court of Common Pleas of Lehigh County,
Criminal Division at No(s): CP-39-CR-0002006-2021.

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           :          PENNSYLVANIA
             Appellant           :
                                             :
                                             :
        v.                    :
                                             :
                                             :
ROBERT AUGUSTE                :     No. 1245 EDA 2022

Appeal from the Order Entered April 18, 2022,
in the Court of Common Pleas of Lehigh County,
Criminal Division at No(s): CP-39-CR-0002005-2021.

BEFORE: LAZARUS, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED APRIL 11, 2023**

The Commonwealth of Pennsylvania appeals from the order granting Robert Auguste's motion to suppress evidence. After careful review, we reverse.

On April 14 and May 5, 2021, Allentown police charged Auguste with firearm offenses and other crimes committed from April 11 to 13, 2021. The cases proceeded to court. On November 18, 2021, Auguste filed an omnibus pretrial motion consisting of a motion to suppress evidence. The suppression court heard the matter on March 21, 2022.

At the suppression hearing, counsel clarified that Auguste's suppression motion was limited to the firearm recovered during a vehicle stop on April 13, 2021. At the suppression hearing, the Commonwealth presented the testimony of Allentown Police Officers Bryan Guzley and Kaila Balatgek. Auguste did not present any witnesses.

The suppression court made the following factual findings:

> On April 13, 2021, Allentown Police Officers Guzley and Balatgek were assigned to patrol duties in the Center City area of Allentown, Lehigh County, Pennsylvania. On that date, they were working middle shift in uniform and traveling in a marked patrol unit. Officer Guzley testified that he had been involved in hundreds of drug arrests during his employment with the Allentown Police Department, and had participated in several arrests on firearms offenses. By comparison, Officer Balatgek had only worked for the Allentown Police Department for one year, but had previously been employed with the Pittsburgh and Reading police departments. In her overall experience, she had been involved in hundreds of drug arrests and 25 firearms arrests. Both officers testified that they were familiar with the texture of packaging commonly used with marijuana, as well as the feel of firearms.
>
> On this particular date, the officers had been notified during muster of the description of an African-American male and a vehicle which had been involved in two shootings in Allentown. The male was suspected to be armed, and was not licensed to carry a firearm because he was less than 21 years[] old. A flyer handed out at muster (Commonwealth Exhibit C-1) identified

- 2 -

[Auguste] and detailed a description of the vehicle in question as a black Chevrolet Cruze with a [specific license plate number]. The flyer also indicated the male did not have a valid driver's license.

[Officers] Guzley and Balatgek were on patrol at approximately 6:00 p.m. when they saw the suspect vehicle in the 600 block of W. Washington Street in Allentown. The vehicle was facing south on the southwest corner of the intersection of N. Seventh and W. Washington Streets. The officers stopped this vehicle based on probable cause of . . . Vehicle Code violations. When the officers ran the license plate on the vehicle, they learned the registration was suspended.

The officers noticed the vehicle had heavy window tinting, and the windows were all closed. Due to the time of day and the heavy window tinting, the officers could not see how many occupants were in the vehicle. Officer Guzley went and stood outside the right rear door while Officer Balatgek approached the driver's side door. Officer Balatgek asked the driver to lower all the windows so that the officers could ascertain how many people were in the vehicle. Upon the driver lowering the windows, the officers saw [Auguste] seated in the middle of the back seat.

Officer Guzley saw [Auguste] fumbling around in the back seat as he appeared to be attempting to conceal something from the officers. [Officer] Guzley asked [Auguste] to step out of the vehicle. As [Auguste] stepped out through the right rear passenger door, a blue Tommy Hilfiger bag either fell from his lap or fell from inside the car near his feet. The bag hit the ground with an audible metallic thud. Without touching the blue bag, Officer Guzley did a patdown search of [Auguste,] during which time he felt with an open palm what he recognized as marijuana packaged in plastic. Upon feeling what [Officer] Guzley believed was marijuana, [Auguste] was handcuffed and positioned to lean on a porch near the car. The suspected marijuana was removed from [Auguste's] pocket by another officer and field-tested positive as marijuana.

On cross-examination, Officer Guzley testified the blue Hilfiger [bag] was zipped closed when it fell to the ground and he did not open it. The bag dropped near [Auguste's] right foot as he emerged from the vehicle. [Officer] Guzley believed Officer Balatgek placed the bag on top of the trunk of the suspect vehicle.

Officer Balatgek testified that when she approached the vehicle and asked the female driver to lower all the car windows, the driver was fidgety. [Officer] Balatgek had to ask the female driver to turn the engine off and place the vehicle in park. As Officer Guzley dealt with [Auguste], the female driver asked to be able to speak to [Officer] Balatgek, so they stepped over to a sidewalk area away from the vehicle. After concluding her conversation with the female driver, [Officer] Balatgek stepped over to where [Officer] Guzley had [Auguste].

[Officer] Guzley told [Officer] Balatgek he thought there was a gun in the blue satchel or bag based on the sound the bag made when it hit the ground. As [Officer] Balatgek felt the exterior [of] the bag with an open palm, she detected the "L-shaped" outline of a gun. She then opened the zippered bag and saw the firearm. [Officer] Balatgek explained neither occupant of the vehicle had a valid driver's license so the vehicle was going to be towed due to an expired registration. She decided to conduct an inventory search to document what she found before the vehicle was towed, including the contents of the blue bag.

[Officer] Balatgek acknowledged on cross-examination that [Auguste] had not consented to a search of the bag before she unzipped it, and the female driver did not consent to a search of the vehicle. [Officer] Balatgek also conceded she did not detect the odor of marijuana coming from the bag.

Memorandum Opinion, 4/18/22, at 2–4 (spelling of "Guzley" changed).

The suppression court took the matter under advisement. On April 18, 2022, it granted Auguste's motion to suppress.

The Commonwealth timely appealed. It certified that the order granting suppression would terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d). The Commonwealth and the suppression court complied with Pennsylvania Rule of Appellate Procedure 1925.

The Commonwealth raises three issues for review:

1. Did the trial court err in granting [Auguste's] motion to suppress the firearm seized by Allentown Police where the

- 4 -

> search of [Auguste's] satchel was a valid search incident to arrest?

> 2. Did the trial court err in granting [Auguste's] motion to suppress the firearm seized by Allentown Police where exigencies justified police opening [Auguste's] satchel that fell onto the street when [Auguste] exited the vehicle so police could conduct a valid **Terry** frisk?

> 3. Did the trial court err in granting [Auguste's] motion to suppress the firearm seized by Allentown Police where the firearm would have inevitably been discovered in Auguste's satchel during a valid inventory search?

Commonwealth's Brief at 4.

Our review is framed as follows:

> We review trial court suppression orders to determine whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We are bound by the suppression court's factual findings so long as they are supported by the record. In reviewing an appeal by the Commonwealth of a suppression order, we may consider only the evidence from the [defendant's] witnesses along with the Commonwealth's evidence which remains uncontroverted. Our scope of review of suppression court factual findings is limited to the suppression hearing record. We, however, are not bound by a suppression court's conclusions of law; rather, when reviewing questions of law, our standard of review is *de novo* and our scope of review is plenary.

**Commonwealth v. Anderson**, 276 A.3d 282, 292 (Pa. Super. 2022) (*en banc*) (quoting **Commonwealth v. Barr**, 266 A.3d 25, 39 (Pa. 2021)).

The record in this case supports the suppression court's factual findings. We will therefore address the Commonwealth's legal theories in turn.

In its first issue, the Commonwealth contends that opening the bag was a valid search incident to arrest. Commonwealth's Brief at 14–25. It states that the bag remained within Auguste's immediate control during his arrest.

Therefore, it argues that the possibility that Auguste could reach the bag permitted Officer Belatgek to open it.

The purpose of a search incident to arrest is to prevent the arrestee from accessing a weapon or destroying evidence. *E.g.*, *Knowles v. Iowa*, 525 U.S. 113, 116 (1998) (citing *United States v. Robinson*, 414 U.S. 218, 234 (1973)). When a person is arrested, police may search "the person and the immediate area which the person occupies during his custody." *Commonwealth v. White*, 669 A.2d 896, 902 (Pa. 1995). "The central question is whether the area searched is one 'within which (the arrested person) might gain possession of a weapon or destructible evidence.'" *Commonwealth v. Bess*, 382 A.2d 1212, 1214 (Pa. 1978) (quoting *Chimel v. California*, 395 U.S. 752, 763 (1969)). This is true even after the arrestee has been brought under some degree of control. *Id.*

The suppression court cited *Commonwealth v. Timko*, 417 A.2d 620 (Pa. 1980). There, the record suggested that an arrestee's "bag was under the exclusive control of" officers when it was searched. *Id.* at 623. Our Supreme Court held that this did not establish that the search was incident to arrest. *Id.*

Here, the suppression court did not find that Auguste's bag was in Auguste's control *when Officer Belatgek opened it*. While the Commonwealth urges us to characterize the facts differently than the suppression court found, that would violate our standard of review. As in *Timko*, the Commonwealth did not establish that Auguste could access the bag at the time it was

searched. Therefore, the suppression court properly concluded that this was not a valid search incident to arrest.

In its second issue, the Commonwealth argues that exigent circumstances justified opening the bag. Commonwealth's Brief at 25–34. Because the police could conduct a pat-down search of Auguste, *Terry v. Ohio*, 392 U.S. 1 (1968), the Commonwealth submits that they could also search the bag that fell out of the car with Auguste. It reasons that leaving the bag unopened on the street would have been dangerous.

Auguste responds that the officers did not testify about any danger of the contents of the bag. He posits that if the police believed the bag was dangerous, they would not have put it on top of the trunk of the car.

Under Pennsylvania law, the relevant exception to the warrant requirement generally requires probable cause that evidence will be found and "exigent circumstances" that prevent obtaining a warrant, such as imminent danger to the police or the public. *Commonwealth v. White*, 669 A.2d 896, 902 n.5 (Pa. 1995). In *Timko*, our Supreme Court held that the mere possibility that a bag contained a weapon was insufficient to satisfy this exception:

> While the events leading up to the search were such as would lead a reasonable policeman to believe the zippered bag might contain a weapon, nothing further occurred to justify an **immediate warrantless** search. For example, there is no suggestion the bag contained explosives or some other item which might in some way endanger the police officers or others, nor is there a suggestion the bag or its contents were in danger of concealment or destruction.

***Timko***, 417 A.2d at 623 (emphasis added).

Again, ***Timko*** controls. The metallic thud and L-shaped outline in the bag established probable cause that the bag contained a gun. However, no exigent circumstances excused the failure to obtain a warrant before opening the bag. Nothing suggested that the bag would explode. The suppression court found that neither Auguste nor the driver of the car could reach the bag when it was opened, negating any danger of concealment or destruction. Therefore, the suppression court properly concluded that exigent circumstances did not justify the warrantless search.

In its third issue, the Commonwealth submits that the police would have inevitably discovered the gun, even if they had not opened the bag on the street with no warrant. Commonwealth's Brief at 34–39. The Commonwealth reasons that the police would have opened the bag either during an inventory search of the car or while booking Auguste.

Auguste responds that the bag was not in the car when it was towed, and he points to testimony that the police never conducted an inventory search of the car.[1]

We have summarized the doctrine of inevitable discovery:

Evidence which would have been discovered was sufficiently purged of the original illegality to allow admission of the evidence. Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality. Evidence is admissible under this doctrine where the Commonwealth

---

[1] Officer Belatgek testified that the car "wasn't inventoried at all" "pending a search warrant." N.T., Suppression, 3/21/22, at 38.

demonstrates by a preponderance of the evidence that the illegally obtained evidence inevitably would have been discovered through lawful means.

*Commonwealth v. Heidelberg*, 267 A.3d 492, 505 (Pa. Super. 2021) (quoting *Commonwealth v. Anderson*, 40 A.3d 1245, 1249 n.6 (Pa. Super. 2012)).

Here, the suppression court made the factual finding that Officer Belatgek "decided to conduct an inventory search to document what was found before the vehicle was towed, including the contents of the blue bag." Memorandum Opinion, 4/1/22, at 4. However, the court rejected the theory of inevitable discovery because the bag had fallen out of the car and therefore "would not have been inspected as an item of an inventory search. It was on the ground unless the officers improperly placed the bag back in the car." *Id.* at 10.

For purposes of inevitable discovery, the "initial illegality" here is Officer Belatgek opening the bag without a warrant. The inquiry is whether, if Officer Belatgek had not unzipped the bag when she did, the police would have inevitably discovered the gun during an inventory search. First, we observe nothing illegal or improper about moving the zippered bag from the ground to the car trunk. The bag was then located on the car.[2] The suppression court made a factual finding that Officer Belatgek decided to conduct an inventory search on the scene before the car was towed. The bag was part of that

_____

[2] Although the suppression court noted it would have been improper to place the fallen bag back in the car, it cites no authority for this legal conclusion, and we are aware of none.

search. As such, we conclude that the Commonwealth met its burden to prove that the police would have inevitably discovered the gun.[3] We will therefore reverse the order granting suppression and remand for trial.

Suppression order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/11/2023

---

[3] An inventory search is a distinct exception to the warrant requirement, which generally requires a non-investigative search of an impounded vehicle. ***See Commonwealth v. Lagenella***, 83 A.3d 94, 102 (Pa. 2013). Our analysis is limited to the Commonwealth's argument that the gun ***would have been*** seized as part of an inventory search, not that it ***was*** seized as part of an inventory search. We therefore do not reach a separate conclusion on the validity of Officer Belatgek's decision to search the car before it was towed. ***Cf. Commonwealth v. King***, 259 A.3d 511, 522 (Pa. Super. 2021) (applying the doctrine of inevitable discovery to a pre-impoundment inventory search).