517 A.2d 559

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Michael William HENRY, Appellee.**

Superior Court of Pennsylvania.

Argued June 25, 1986.

Filed Nov. 3, 1986.

James M. Schall, Assistant District Attorney, McConnellsburg, for Com., appellant.

Jill A. McCracken, Chambersburg, for appellee.

Before WIEAND, BECK and WATKINS, JJ.

WIEAND, Judge:

Where a police officer has stopped a vehicle for speeding and has observed marijuana in a box which he has seized and opened upon suspicion that the motorist was attempting to remove a gun, does the right to examine the contents of the box continue after the police officer has arrested the motorist and placed him securely in the police vehicle? The trial court held that the right to conduct a warrantless examination of the contents of the box terminated with the motorist's arrest and, therefore, suppressed additional contraband discovered during a warrantless examination of the contents conducted by the arresting officer immediately after the arrestee had been secured. The Commonwealth appealed. We reverse.

On June 25, 1985, Trooper Daryl Heckman stopped a vehicle being driven by Michael William Henry, a California resident, at an excessive speed on Interstate Route 70 in Fulton County. After a citation had been issued, Henry offered to pay the fine in the manner permitted by 75 Pa.C.S. § 6305. Henry exited his vehicle, walked around to the right rear door and retrieved a metal box from the rear floor of the car. Heckman initially assumed that Henry intended to open the box for the purpose of obtaining money with which to pay the fine. Henry placed the box on the rear seat of the car, where he opened it while using his body to shield it from Heckman's view. Heckman moved several times in order to obtain a view of Henry's hands and the box, but Henry continuously moved to place his body between Heckman and the box. Heckman became suspicious. He could see neither Henry's hands nor the box when he heard a metallic sound. Fearing that Henry might have a gun, Heckman grabbed Henry, pulled him from the car and pushed him against the open door of the car. At this point, while Heckman was still within arm's reach of the box, he asked Henry if he had a gun. When Henry gave a negative response, Heckman flipped open the lid of the box. There he observed a baggie containing what

appeared to be marijuana, a plastic bottle containing capsules, and money. Heckman thereupon handcuffed Henry and took him to the police vehicle. He then returned to Henry's vehicle, retrieved the metal box, returned to the police vehicle, and there examined the contents of the box. He found numerous controlled substances and various drug paraphernalia. The money in the box was in excess of Five Thousand ($5,000.00) Dollars. A search warrant was obtained, and a search was made of the vehicle. The search of the vehicle disclosed a marijuana cigarette and additional drug paraphernalia.

Henry was charged with various drug offenses. He filed an omnibus pre-trial motion to suppress evidence, contending that Heckman's opening of the box and the subsequent search of his vehicle had been in violation of the Fourth Amendment of the Constitution of the United States and Article I, Section 8 of the Pennsylvania Constitution. Following an evidentiary hearing, the court entered an order which suppressed all evidence seized by Trooper Heckman except the marijuana, capsules and money observed by Heckman when he initially flipped open the lid of the metal box in order to protect himself lest a gun be concealed therein. Heckman's later examination of the box, the court held, was illegal because a warrant should have been obtained before further examination took place.

Appellee appears to concede that the initial opening of the box by Trooper Heckman was authorized as a self-protective frisk under *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). See also: *Commonwealth v. Carter,* 334 Pa.Super. 369, 483 A.2d 495 (1984). At that time, Heckman had reason to believe that a gun might be concealed in the box, the box was within Henry's reach, and the search was limited to the extent necessary to discover dangerous weapons which constituted a potential threat to the trooper's safety. As such, we have no reason to question the suppression court's conclusion that Trooper Heckman's initial observation of contraband did not violate any constitutionally protected right of privacy. Because the

box had been lawfully opened and found to contain illegal drugs, appellee no longer had a protected privacy interest with respect to the contraband initially observed by the officer. Therefore, Trooper Heckman could lawfully seize the same after appellant had been restrained. "[O]nce a container has been found to a certainty to contain illicit drugs, the contraband becomes like objects physically within the plain view of the police, and the claim to privacy is lost." *Illinois v. Andreas,* 463 U.S. 765, 771–772, 103 S.Ct. 3319, 3324, 77 L.Ed.2d 1003, 1010 (1983) (footnote omitted).

■ However, we disagree with the trial court's conclusion that the arresting officer, even though his initial opening of the box had been lawful, was precluded on constitutional grounds from making further examination of the box and its contents after the arrestee had been handcuffed and placed in the police vehicle. Our disagreement is compelled by the opinion of the United States Supreme Court in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). There, a vehicle with four occupants had been stopped for speeding. After the vehicle had been stopped, the arresting officer discovered that none of the occupants owned the vehicle or were related to the owner. The officer also smelled burned marijuana and observed an envelope marked "Supergold" which he believed to be associated with marijuana. He directed the occupants to get out of the vehicle, placed them under arrest, patted them down and "split them up ... so they would not be in physical touching area of each other." The officer then picked up from the floor of the car and opened the envelope which was suspected of containing marijuana. After his suspicions had been confirmed, the officer also searched the passenger area of the car, where he found a black leather jacket belonging to Belton. He unzipped a pocket of the jacket and there found cocaine. Belton was charged, tried and convicted for criminal possession of cocaine. The New York Court of Appeals reversed, holding that "[a] warrantless search of the zippered pockets of an unaccessible jacket may not be upheld as a search incident to a lawful arrest

where there is no longer any danger that the arrestee or a confederate might gain access to the article." *Id.* at 456, 101 S.Ct. at 2862, 69 L.Ed.2d at 772. The Supreme Court of the United States granted certiorari to consider "the question of the proper scope of a search of the interior of an automobile incident to a lawful custodial arrest of its occupants." *Id.* at 459, 101 S.Ct. at 2863, 69 L.Ed.2d at 774.

The Court held:

[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.

It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. *United States v. Robinson, supra.*[1] *Draper v. United States,* 358 U.S. 307, 3 L.Ed.2d 327, 79 S.Ct. 329 [ (1959) ]. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.

. . . . "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment: that intrusion being lawful, a search incident to the arrest requires no additional justification." 414 U.S. 218 at 235, 94 S.Ct. 467, 476, 38 L.Ed.2d 427, 66 Ohio Ops 2d 202.[2]

*Id.* at 460–461, 101 S.Ct. at 2864, 69 L.Ed.2d at 775–776.

Because *Belton* is factually similar to the instant case, we would normally deem it sufficient to cite the decision of the Supreme Court and rest there. However, the trial court's suppression order was based on, and appellee relies upon, the decision of the Pennsylvania Supreme Court in *Com-*

1. 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

2. *United States v. Robinson.*

monwealth v. *Timko*, 491 Pa. 32, 417 A.2d 620 (1980). Therefore, our analysis would not be complete without a review of *Timko* and its continuing effect, if any, on the law pertaining to searches and seizures involving automobiles and containers found therein.

In *Timko,* a policeman had stopped a motorist intending to cite him for reckless driving. When the officer approached the vehicle, the driver rolled up the window, locked the door and, using an obscenity, refused to exhibit his license and owner's card. Additional officers were called to the scene and as one of them began to pry open the door with a tire iron, the defendant reached for a zippered brown valise in the back seat. Having observed boxes marked "shotgun shells" in the vehicle and suspecting that the defendant was reaching for a weapon, the officer smashed the vehicle's window and unlocked the door. The defendant was then pulled from the vehicle and restrained. While this was transpiring, another officer retrieved the valise and searched it, discovering two packages of marijuana and a loaded revolver. The defendant filed a motion to suppress the contents of the valise. The motion was denied, and the defendant was convicted. On direct appeal from the judgment of sentence, the Supreme Court reversed and granted a new trial on grounds that the evidence found in the valise should have been suppressed. The court concluded that because the defendant had been handcuffed, and the bag had been under the exclusive control of the police at the time it was searched, the search could not be justified as incident to an arrest. The Court said:

A police officer may conduct a search of an arrestee's person and the area within an arrestee's immediate control as a matter of course because of the ever-present risk in an arrest situation that an arrestee may seek to use a weapon or to conceal or destroy evidence. *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977); *Chimel v. California,* [395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) ]. However,

"[o]nce law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of that property is no longer an incident of the arrest."

*United States v. Chadwick, supra,* 433 U.S. at 15, 97 S.Ct. at 2485[, 53 L.Ed.2d at 551]. In such a situation, absent exigent circumstances, a warrantless search of luggage or other personal property in which a person has a reasonable expectation of privacy is not permissible.

*Commonwealth v. Timko, supra,* 491 Pa. at 37–38, 417 A.2d at 622–623.

*Timko* was decided in 1980, a year before the decision of the United States Supreme Court in *Belton.* It was decided solely on the basis of the Fourth and Fourteenth Amendments of the United States Constitution. Article I, Section 8 of the Pennsylvania Constitution was neither referred to nor discussed. Even more specifically, the Pennsylvania Supreme Court's decision was based upon an earlier decision of the United States Supreme Court in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *Chadwick,* however, was distinguished and severely limited to its own facts by the Supreme Court in *Belton,* where the Court said:

But [that decision did not involve] an arguably valid search incident to a lawful custodial arrest. As the Court pointed out in the *Chadwick* case: "Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search therefore cannot be viewed as incidental to the arrest or as justified by any other exigency." 433 U.S. at 15, 97 S.Ct. 2476, 53 L.Ed.2d 538.

*New York v. Belton, supra* 453 U.S. at 461–462, 101 S.Ct. at 2865, 69 L.Ed.2d at 776. See also: *Commonwealth v.*

*Baker,* 347 Pa.Super. 213, 500 A.2d 483 (1985) (questioning continued validity of *Timko*).

In the instant case, there is no question but that appellee was the subject of a lawful custodial arrest. The trooper's search of the box, begun prior to arrest, was continued immediately after the custodial arrest had been completed and the arrestee detained. Under these circumstances, *Belton* teaches that the entire search of the box was an incident of the arrest. To the extent that the decision in *Timko* suggests otherwise, it is in conflict with *Belton.* Therefore, *Timko* can no longer be said to represent an accurate statement of federal constitutional principles.

Appellee argues that *Timko* should nevertheless be followed as determinative of the interpretation to be placed upon Article I, Section 8 of the Pennsylvania Constitution. We reject this argument. As we have already observed, the *Timko* court based its decision exclusively on federal constitutional grounds and did not attempt to apply state constitutional guarantees. Thus, *Timko* is not determinative of the state constitution's applicability to searches which are incident to lawful arrest and are physically conducted or completed after an arrestee has been placed securely in police custody. It follows that the application of the Pennsylvania Constitution to such circumstances is still an open question. Therefore, we are free to conclude, as we do, that the preferable course is to follow the "bright line" test announced by the United States Supreme Court in *New York v. Belton, supra.* We adopt the *Belton* standard in the firm conviction that " '[a] single, familiar standard is essential to guide police officers, who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront.' " *New York v. Belton, supra* 453 U.S. at 458, 101 S.Ct. at 2863, 69 L.Ed.2d at 774, quoting *Dunaway v. New York,* 442 U.S. 200, 213–214, 99 S.Ct. 2248, 2257, 60 L.Ed.2d 824, 836 (1979) (footnotes omitted). " 'A highly sophisticated set of rules, qualified by all sorts of ifs, ands, and buts and requiring the drawing of subtle nuances and

hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges feed, but they may be "literally impossible of application by the officer in the field." ' " *New York v. Belton, supra* at 458, 101 S.Ct. at 2863, 69 L.Ed.2d at 773–774, quoting LaFave, *"Case by Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 S.Ct.Rev. 127, 141.

The importance of the Supreme Court's admonition is vividly illustrated by the facts of the instant case. To hold, as appellee would have us do, that an initially valid warrantless examination of the interior of the box seized from appellee's vehicle could not be lawfully continued after appellee had been placed under arrest and restrained, is the type of legal legerdemain which frustrates law enforcement without correspondingly protecting any constitutionally guaranteed privacy interest of the arrestee. Therefore, we decline appellee's invitation to depart from the "bright line" test adopted by the United States Supreme Court in *New York v. Belton, supra,* and to interpret the Pennsylvania Constitution in a more sophisticated manner with "subtle nuances and hairline distinctions" which are difficult, if not impossible, of application by the police officer in the field. We hold, rather, that a search incident to a lawful arrest requires no other justification in order to be valid under Article I, Section 8 of the Pennsylvania Constitution.

Reversed and remanded for further proceedings. Jurisdiction is not retained.

BECK, J., files a concurring opinion.

BECK, Judge, concurring:

I concur. While the result is correct, this court is not the proper forum to reject a principle of law established by the Pennsylvania Supreme Court.

The majority correctly notes that *Timko* was decided on federal constitutional grounds. However, it is inescapable that our state Supreme Court decided *Timko.* If a retreat is to be sounded from *Timko,* the proper staging ground is

316

in the state Supreme Court, even if *Timko* was decided solely on federal grounds.

I concur, nevertheless, because the search can be upheld on a plain view theory. *See Commonwealth v. Fleck*, 324 Pa.Super. 227, 233, 471 A.2d 547, 550 (1984); *Commonwealth v. Martin*, 252 Pa.Super. 265, 268, 381 A.2d 491, 492 (1977).

Accordingly, I concur.