## Commonwealth v. Perez

*John Adams, assistant district attorney,* for the Commonwealth.

*John E. Gainer,* for defendant.

LUDGATE, *J.,* July 2, 1992—On March 16, 1992, the defendant, a juvenile, had a detention hearing at which time it was ordered that the defendant be detained for possession of a Schedule II controlled substance (cocaine)

and possession of a Schedule I controlled substance (heroin), possession with intent to deliver a Schedule II controlled substance (cocaine) and possession with intent to deliver a Schedule I controlled substance (heroin). On March 26, 1991, a hearing was held before the Honorable Arthur E. Grim, after which the court found that the defendant was not amenable to treatment, supervision and/or rehabilitation as a juvenile and accordingly, the court ordered that the charges be certified to adult court for purposes of prosecution.

On April 17, 1992, the defendant was arraigned on the above charges.

On May 19, 1992, an omnibus pretrial hearing was held. The court denied the defendant's motion to suppress the evidence seized during a search of the defendant and the statement given by the defendant to the police.

On May 21, 1992, a jury trial was held before the Honorable Linda K.M. Ludgate. The defendant was found guilty on: count one, possession of cocaine; count two, possession of heroin and; count three, possession with intent to deliver cocaine. Count four, was dismissed prior to trial on a motion of Assistant District Attorney John T. Adams. The defendant was given notification of a mandatory sentence pursuant to 18 Pa.C.S. §7508 after the conviction.

On May 26, 1992, defendant filed a motion for a new trial and/or arrest of judgment. The motion was argued on June 22, 1992.

## STATEMENT OF FACTS

(1) On or about March 5, 1992, at approximately 11:30 p.m., Officer Berrios of the Reading Bureau of Police,

observed defendant, Javier Perez, talking to someone in a taxi cab.

(2) The officer approached the defendant. The defendant jumped back from the taxi when he saw the officer.

(3) At that time, the officer observed the defendant put his hands near his groin area. The officer told the defendant to remove his hands for safety reasons.

(4) The officer then discovered that the defendant was only 17 years old. The defendant was born on July 17, 1974.

(5) The defendant was in violation of the Reading City Ordinance, Article 725.01. This was a curfew violation.

(6) A pat-down was performed and the defendant was cuffed. The defendant was detained at the scene, while information was obtained about the other male with him.

(7) The defendant was then taken to the police station. He was brought down to the juvenile detention area.

(8) At approximately 12:30 a.m., the defendant gave police a name to contact. The defendant stated that this was his father. However, that individual was not his father and further contacts had to be made.

(9) The defendant's contact and the defendant's mother arrived at the station at approximately 12:45 a.m.

(10) A strip search of the defendant was conducted between the hours of 12:30 and 1 a.m.

(11) The search revealed a leather Oakland Raiders bag within the defendant's groin area.

(12) At that time, the defendant stated "O.K., you got me."

(13) The bag was removed and emptied. Its contents contained 14 bags of cocaine and two bags of heroin.

(14) The defendant stated that the heroin was for his own use.

## DISCUSSION

(A) Whether or not the court erred in admitting evidence obtained as a result of an unlawful arrest?

(i) *Whether or not probable cause existed?*

The defendant asserts that the arrest of Javier Perez was unlawful due to the fact that the police had no probable cause to believe that a crime had been or was being committed. We do not agree.

"No person who is 16 years of age or older and under the age of 18 years shall loiter, loaf or idle on or about any public street, avenue, alley, park or other place in the city between the hours of 10 p.m. and 5 a.m. of the following day, official city time." Ordinance 24-69 §2, Reading City Ordinance.

According to *Black's Law Dictionary*, 6th Edition (West 1990), the term "loiter" is "to be slow in movement; to stand around or move slowly about; to stand idly around...." The term "loaf" is defined as "to spend time in idleness to lounge or loiter about or along."

In the instant case, as Officer Berrios approached the defendant, he saw him talking to someone in a cab. The defendant was on the sidewalk with a friend. At that point, Officer Berrios could have determined that the defendant was moving slowly and standing around. After asking the defendant his age and discovering that the

defendant was 17 years of age, Officer Berrios had probable cause to arrest the defendant for a curfew violation.

Section 5 of the Reading City Ordinance 29-69, states that "Any police officer is authorized to arrest, with or without warrant, any person or persons violating any provision of this article, and any child unaccompanied by a parent...."

Officer Berrios had the requisite probable cause to arrest. Officer Berrios had authority to arrest the defendant, which was authorized by the ordinance.

(ii) *Whether or not the curfew violation for which Javier Perez was arrested was a crime?*

The defendant argues that the violation of Ordinance 24-69 §2 of the Reading City Ordinance is not a crime. We do not agree.

The Pennsylvania Crimes Code classifies an offense as a summary if:

(1) It is so designated by this Title or in a statute other than this Title; or

(2) If a person convicted thereof *may* be sentenced to a term of imprisonment, the maximum of which is not more than 90 days. 18 Pa.C.S. §107(c). (emphasis added)

The penalties for violation of Reading City Ordinance 24-69 §2, is stated as follows: "Whoever violates any provision of this Article, shall upon conviction be fined not more than $300 and costs and in default of payment thereof shall be imprisoned not more than 90 days." Ordinance 24-69 §6.

Since a violation of section 2 *may* result in a period of imprisonment, not more than 90 days, due to a failure

to pay the $300 fine, the Reading City Ordinance 24-69 §2 can be classified as a summary offense.

(iii) *Whether or not the arrest of Javier Perez was used as a pretense to search the defendant for drugs?*

After the defendant was arrested for a curfew violation, he was transported to City Hall. The police officer with the defendant had been informed by the Officer who had been on duty in that area prior to his shift, that he had seen the defendant in the area. At the time Officer Berrios was approaching the defendant, he saw him reach down toward his crotch. The area where the defendant was found was considered to be a high drug trafficking area.

The search in the case at bar, was a search incident to a lawful arrest for violation of City Ordinance 24-69 §2.

There is no evidence that the police used the arrest as a pretense to search the defendant for drugs. After the defendant was taken into custody his parents were contacted by Sergeant George Lessig. The defendant was brought down to the Youth Aide Division of City Hall. The police followed standard procedures regarding juvenile detention. The defendant was arrested as a result of curfew violation. The subsequent search was a search incident to arrest. The fact that drugs were found on the defendant as a result of this search, does not suggest that the arrest was used as a pretense to search the defendant for drugs. Standard procedures were followed.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment ... a search may be made of the person of the arrestee by virtue of the lawful arrest."

*United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

(iv) *Whether or not the police have the authority to arrest for a summary offense, not involving breach of the peace?*

Defendant argues that even if the violation in question had been a summary offense, the police would have had no power to arrest Javier Perez. The defendant further states that the only permissible arrests without a warrant occur when the summary offense involves a breach of the peace, endangers property or safety of another person present. We do not agree.

The defendant argues that with the exception of offenses under the Vehicle Code "the only permissible arrest without a warrant occurs when the summary offense involved a breach of the peace, endangers property or safety of any person present." *Commonwealth v. Shillingford,* 231 Pa. Super. 407, 332 A.2d 824 (1975); *Commonwealth v. Bullers,* 410 Pa. Super. 176, 599 A.2d 662 (1991).

In *Shillingford,* the defendant was arrested for underage drinking. This was a violation of 18 Pa.C.S. §6308, which states that "a person is guilty of a summary offense if he, being less than 21 years of age, attempts to purchase, consumes, possesses, transports any alcohol, liquor, malt or brewed beverages." The defendant was transported to the police department and a search revealed barbiturates. The defendant was subsequently charged with illegal possession of a controlled substance and convicted.

In *Bullers,* the defendant's initial arrest was for underage drinking. This was a summary offense. The officer conducted an on the spot pat-down. He discovered loose change and a red canvas bag. A later search at the station

revealed a loaded gun hidden beneath the jacket of the defendant, inside his belt, against his back. Having no license to carry a gun, the defendant was then arrested. The court stated that the authority of a police officer to arrest without a warrant does not extend to a summary offense of underage drinking under the circumstances. The violator did not exhibit disorderly conduct, breach of peace, drunkenness or other irregular behavior. *Bullers* at 178, 599 A.2d at 663.

Each case involved a summary offense. Each summary offense did not specifically authorize an arrest. Therefore, the court had to look for other authorization to arrest for a summary offense. The courts relied on Rule 51 of the Pennsylvania Rules of Criminal Procedure. That rule states that "Criminal proceedings in summary cases shall be instituted either by: (a) issuing a citation to the defendant; or (b) filing a citation; or (c) filing a complaint; or (d) arresting without a warrant *when arrest is specifically authorized by law.*" *Commonwealth v. Bullers,* at 183, 599 A.2d at 665. (emphasis in original)

The court stated that Rule 51(d) conditioned the propriety of a warrantless arrest upon the existence of independent authorization, but did not, in and of itself, authorize an arrest for summary offenses. *Id.* at 183, 599 A.2d at 666. The court in *Bullers* stated that section 6308(d) which referred to notification of a parent or guardian upon an arrest of a minor, did not confer the authority to arrest for violation of that section.

In the instant case, the Reading City Ordinance Article 725 §5, specifically gives the police the authority to arrest for a curfew violation with or without a warrant. Section 725.05 specifically states *"Authority of Police Officer—*

Any police officer is authorized to arrest, with or without a warrant, any person or persons violating any provision of this article and any child unaccompanied by a parent...."

The ordinance specifically granted the police the authority to arrest for a curfew violation. The officer observed the defendant on the street, in violation of this ordinance. Therefore, the arrest was lawful.

(B)    Whether or not the court erred in admitting evidence seized as a result of an unlawful and unreasonable search and seizure?

The defendant argues that the search of the leather Oakland Raiders bag, which was found during the strip search was unconstitutional.    We agree.

Having established that there was a valid arrest, based on probable cause, we now must determine the critical question.    Whether the warrantless search of the leather bag was valid as incident to that arrest?

"Absent exigent circumstances, a warrantless search of ... personal property, in which a person has a reasonable expectation of privacy is not permissible." *Commonwealth v. Walker,* 348 Pa. Super. 207, 501 A.2d 1143 (1985); *Commonwealth v. Timko,* 491 Pa. 32, 417 A.2d 620 (1980).

(i)    *Expectation of privacy—*

The defendant had a reasonable expectation of privacy in his leather bag.    "An expectation of privacy is present when the individual, by his conduct, 'exhibits an actual (subjective) expectation of privacy' and that the subjective expectation 'is one that society is prepared to recognize as reasonable.'" *Commonwealth v. Oglialoro,* 525 Pa. 250, 579 A.2d 1288 (1990). The controlling consideration is whether the individual contesting the search and seizure

entertains a legitimate expectation of privacy in the premises or area searched. *Id.* at 1291.

In *United States v. Johnson,* 834 F.2d 1191 (5th Circuit 1987), the defendant had a reasonable expectation of privacy in his briefcase and its contents. In the case at bar, a hidden leather bag, found within the defendant's groin area was removed. The leather bag was not see-through. The bag was hidden and zippered. Its location and condition display the defendant's intent to keep it private. In *Johnson,* the court found that there was a reasonable degree of privacy in a briefcase the defendant was carrying in plain view. He was followed and discovered to have embezzled mail. The defendant still had a reasonable expectation of privacy in the briefcase and its contents. In the case at bar, the police did not observe what was put into the bag. The police had not conducted any surveillance of the defendant. The bag was not in plain view, it was hidden. The defendant's reasonable expectation of privacy in the leather bag and its contents is manifest.

(ii) *No exigency occurred at the police station to justify the warrantless search of the leather bag.*

The Commonwealth relies on *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), which stated that a warrantless search incident to a lawful arrest is reasonable, and no justification other than that required for the arrest itself is necessary to conduct such a search. The Commonwealth also relies on *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), which stated that a person may be fully searched incident to an arrest. This exception according to the Commonwealth applies whenever there

is a custodial arrest, including those involving summary offenses. *Commonwealth v. Williams*, 390 Pa. Super. 493, 568 A.2d 1281 (1990); *Commonwealth v. Canning*, 402 Pa. Super. 438, 587 A.2d 330 (1991).

In reviewing the Commonwealth cases we must determine their precedential value. In order to do so, this court must analyze the factual scenarios of each individual case.

In *Robinson, supra,* the officer arrested the defendant for operating a vehicle after revocation and obtaining a permit by misrepresentation. The officer then conducted a full search of the defendant. The officer stated that the department instructed all officers to examine the "contents of all of the pockets" of the arrestee in the course of *a field search. Robinson* at 433. These standard operating procedures were initiated by the police department, "primarily for the officer's own safety; secondly, for the safety of the individual he has placed under arrest; and, thirdly, to search for evidence of the crime." *Id.*

The search in *Robinson* was conducted at approximately the same time the defendant was arrested. The search was conducted in the field. The court determined that the lawful arrest established the authority to conduct a full-body search.

In *Commonwealth v. Williams, supra,* the defendant was given a citation for urinating which constituted disorderly conduct. There was no specific authority to arrest contained within the statute for disorderly conduct. The defendant lived outside the Borough of Donora and had no proof of his identity. The Pennsylvania Rules of Criminal Procedure authorized an arrest for a summary offense when the officer believes that the defendant would flee.

The defendant was arrested. Before putting the defendant in the police car, the officer performed a brief pat-down search of the defendant. This was standard procedure. The pat-down revealed a long object in the pocket of the defendant's jacket. The officer believed it could have been a knife or another dangerous instrument. The officer discovered that the object was 11 packets of cocaine.

*Williams* involved a field search. The officer was concerned for his safety. A search for weapons revealed cocaine. A search was conducted incident to an arrest of a summary offense at the scene of the crime. The officer's concern for safety justified the search and seizure of the cocaine.

The Commonwealth argues that these cases give an officer the authority to conduct a full search when an arrest for a summary offense has occurred. However, the justification for the search was the officer's safety. This exigent circumstance is an exception to the warrant requirement. The search also occurred in the field. This fact increases the risk of danger to the officer. When an arrest has occurred at the scene of a crime, an officer does not have time to apply for a warrant. An immediate search of the defendant is necessary to protect the officer's safety and to protect the destruction of evidence.

In the instant case, the strip search of the defendant revealed a leather bag. The defendant was placed in a separate room while he was searched. The bag was removed from the defendant immediately upon discovery. Officer Berrios moved the bag to a separate room and placed it on a table. The officers involved in the search stated that they were not concerned about the possibility

of the defendant being dangerous, or the possibility that the bag contained weapons. Therefore, no exigency was established to permit a warrantless search of the bag once it was removed and in the exclusive control of the police.

In *Commonwealth v. Canning, supra,* the defendant was arrested for public drunkenness. Before placing the defendant in the wagon, the officer conducted a search and discovered methamphetamine and marijuana. *Canning* involved a field search. The court stated because there was probable cause to arrest, the officer was justified in searching the defendant incident to that arrest and the evidence was properly admissible.

In *Commonwealth v. Walker, supra,* the court determined that a warrantless search of a shaving kit, incident to the defendant's arrest for bank robbery, was valid, considering that during the struggle in which the arresting officer attempted to gain control of the shaving kit, the officer felt what he thought was a gun and that the defendant had no reasonable expectation of privacy in the kit. In *Walker,* there were exigent circumstances to justify the warrantless search of the defendant's shaving kit. During the struggle with the defendant, the officer felt what he thought was a gun. The search was deemed necessary to protect the safety of the officer.

The court in *Walker,* stated that our Supreme Court has recognized "that absent exigent circumstances, a warrantless search of luggage or other personal property, in which a person has a reasonable expectation of privacy is not permissible." Citing *Commonwealth v. Timko,* 491 Pa. 32, 417 A.2d 620 (1980). While the court in *Walker* agreed with *Timko,* stated that the gun provided

ample justification to permit the search of the shaving kit to protect the officer.

The Commonwealth also argues that *United States v. Garcia,* 605 F.2d 349 (1979), should be followed. In *Garcia, supra,* the defendant was approached at an airport. She was placed under arrest and her luggage was seized and searched within a matter of 15 seconds. The court stated that a warrantless search may be undertaken pursuant to a valid arrest if it is substantially contemporaneous with the arrest and is confined to the person and immediate vicinity of the arrestee. *Garcia* at 353. The court continued, stating that "it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent the concealment or destruction." *Id.*

The arrest in *Garcia* took place at an airport. The search of the luggage was a field search. The search was conducted within a matter of 15 seconds. The justification for the search was to prevent the destruction or concealment of evidence. *Garcia* reiterates the warrantless search exception with regard to searches incident to arrest that occur in the field. The court stated that:

"Once law enforcement officers have reduced luggage or other personal property not immediately associated with the person of the arrestee to their exclusive control, and there is no longer any danger that the arrestee might gain access to the property to seize a weapon or destroy evidence, a search of the property is no longer an incident of the arrest." *Garcia* at 354.

The court went on to state that a warrantless search of luggage or other property seized at the time of an arrest, cannot be justified as incident to that arrest, either

if the search is remote in time or place from the arrest. *Garcia* at 354, citing *Preston v. United States,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

The court in *Garcia* stated that since there was only 15 seconds between the approach, arrest and subsequent search, the search was incident to arrest and therefore reasonable.

In *United States v. Schleis,* 582 F.2d 1166 (8th Circuit 1978), the court stated that "the briefcase came under the exclusive control of the police at the time of the arrest when Schleis was handcuffed and taken into custody. The search, however, was conducted at the Bernsville jail after the arrest and after Schleis had been locked in a jail cell. Since the evidence locker was available in which the briefcase could have been securely searched, there was no reason to believe that any evidence in the briefcase might be destroyed. Moreover, there was no reason to believe that the briefcase contained explosives or other danger instrumentalities." *Schleis* at 1172.

The fact scenario in *Schleis* is quite similar to the case at bar. In the instant case, the defendant was arrested at Patton and McClellan Streets in Reading, Berks County, Pennsylvania. After discovering that the defendant was only 17 years old, he was arrested for a curfew violation. The arrest occurred at or around 11:30 p.m. on March 5, 1992. The defendant was then handcuffed and transported to City Hall. The defendant was placed in a juvenile detention. Between the hours of 12:30 and 1 a.m., the defendant was then placed in a separate room. At that time he was still handcuffed. Officer James Gresh, Officer Nelson Berrios and Officer Lessig, observed the search. Officer Berrios found the bag and brought it

into the next room where he proceeded to open it. The contents of the bag revealed 14 bags of cocaine and two bags of heroin. As stated in *Schleis* and *Garcia*, "the search could not be justified as incident to the arrest, because it was remote in time and place from the arrest and no exigent circumstance existed at the time of the search." *United States v. Garcia, supra* at 357.

*Garcia* court stated that in order to safeguard himself and others, and to prevent the loss of evidence, it is reasonable for the arresting officer to conduct a *prompt* and warrantless search of the arrestee's person and the area within his immediate control-construing that phrase to mean the area from within which he might gain possession of weapon or destructible evidence. *Garcia* at 358.

In the case at bar, the defendant's strip search was conducted at the police station, where there were several officers present. The defendant was in a separate room. The officer testified that they were not afraid that the bag contained weapons. The bag was removed by Officer Berrios and taken into another room. An officer remained with the defendant. No exigency justified the warrantless search of the bag once Officer Berrios had the bag within his exclusive control.

Also, the search was conducted more than an hour after the defendant had been arrested. The defendant was arrested at around 11:30 p.m. He was searched between 12:30 and 1 a.m. According to *Garcia*, this search was remote in time and place from the arrest. Therefore, the search cannot be justified as incident to arrest. A warrant should have been obtained in order for the officers to open the bag and view the contents.

The court *Commonwealth v. Henry,* 358 Pa. Super. 306, 517 A.2d 559 (1986), stated that the decision in *Timko, supra,* was based upon an earlier decision of the U.S. Supreme Court in *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *Chadwick,* however, was distinguished and severely limited to its own facts by the Supreme Court in *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), where the court said:

"But [that decision did not involve] an arguably valid search incident to a lawful custodial arrest as the court pointed out in the *Chadwick* case:

"'Here the search was conducted more than an hour after federal agents had gained exclusive control of the footlocker and long after respondents were securely in custody; the search, therefore cannot be viewed as incidental to the arrest or as justified by any other exigency.'" *Commonwealth v. Henry* at 313, 517 A.2d at 563.

In *Henry,* the Pennsylvania court adopted the bright-line test announced by the U.S. Supreme Court in *New York v. Bealton.* "A single, familiar standard is essential to guide police officers who have only limited time and expertise to reflect on and balance the social and individual interests involved in the specific circumstances they confront." *New York v. Belton, supra* at 458. "A highly sophisticated set of rules, qualified by all sorts of 'ifs, ands and buts' and requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges feed, but they may be literally impossible of application by the officer *in the field."* *New York v. Belton,* at 458. (emphasis added)

The main reason for the court adopting the bright-line test announced in *Belton* was to encompass situations in the field. However, at the station, the police are not confronted with the time constraints nor the same possibility of danger to themselves. Once evidence has been seized and securely held, the police do not have to contend with the distinct possibility that the evidence may be destroyed or their lives may be in danger. Therefore, the Fourth and 14th Amendment of the U.S. Constitution and Article 1, §8 of the Pennsylvania Constitution, require the officer to obtain a warrant before searching the contents of the article seized. To hold otherwise, would be to violate the purpose of the United States and Pennsylvania constitutions.

The Commonwealth has argued that the lawful arrest mandates a search incident to that arrest, and that there is no other justification needed for the search. However, the Commonwealth fails to understand the reasoning behind the Pennsylvania court's adoption of the bright-line standard announced in *New York v. Belton.* The court was concerned with *field arrests.* (emphasis added) All the cases the Commonwealth has cited dealt with arrests and subsequent field searches. Therefore, in order to protect the officer's safety and to prevent the destruction of evidence the search incident to arrest exception was expanded to include purses, wallets and bags.

A different set of standards is necessary when dealing with station-house searches after an arrest has taken place. Because the defendant was arrested one hour before the search took place, the search cannot be seen as incident to arrest. The need to prevent the destruction of evidence and to prevent danger to the police officers ended when Officer Berrios removed the leather pouch from the de-

fendant's groin area and carried it to another room. Even though the defendant was not handcuffed at the time of the search, there were several police officers present during the search. The defendant was strip-searched and void of weapons.

No court has specifically overruled *Commonwealth v. Timko, supra,* therefore its holding is still binding precedent upon this court. The distinction that was made regarding *Timko* by the court in *Chadwick,* through *New York v. Belton,* was done so in order to protect the safety of the police and the destruction of evidence in field searches. Therefore, the bright-line test announced in *Belton,* which was necessary for field searches cannot be utilized during a station-house search when the danger to the officer has subsided and the destruction of evidence is not possible.

"Where ... the police, without endangering themselves or risking loss of the evidence, lawfully detained one suspected of criminal activity and secured his suitcase, they should delay the search thereof until after judicial approval has been obtained." *United States v. Johnson* at 1195.

Because there was no search warrant, the Commonwealth had to justify the search of the defendant's leather bag under one of the warrantless search exceptions. The Commonwealth stated that it was a search incident to arrest and therefore should be exempt from the warrant requirement. A defendant has a reasonable expectation of privacy in a leather pouch. See *United States v. Johnson, supra,* where defendant had a reasonable expectation of privacy in a briefcase and its contents.

The Commonwealth acted properly in seizing the defendant's leather bag after his arrest, but not in searching it. Once the Commonwealth had taken possession of the briefcase, there was no realistic chance that the defendant could have regained possession of the bag to procure a weapon or destroy evidence. The leather bag was no longer within the defendant's control or reach. At the very least, the police officer could have put the bag in a secure storage place until a search warrant could be obtained.

Therefore there were no exigent circumstances that justified the warrantless search of the defendant's leather bag. "Unlike searches of the person, searches of possessions within an arrestee's immediate control cannot be justified by any reduced expectation of privacy caused by the arrest." *Chadwick,* 433 U.S. at 16 n. 10. The exigency of the arrest itself, merely justified the seizure, but not the search of the leather bag.

The Commonwealth did not argue or brief or present any testimony that the search of the Oakland Raiders bag was an inventory search. Therefore, we do not address that issue.

The defendant's remaining two issues raised in the post-trial motion were not briefed, therefore they are waived. *Commonwealth v. Vitacolonna,* 292 Pa. Super. 284, 443 A.2d 838 (1982).

## ORDER

And now, July 2, 1992, it is hereby ordered and decreed that defendant's motion for a new trial is hereby granted.