J-S66043-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  K.R.T., a Minor, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF:  K.R.T., | : | |
| | : | |
| Appellant | : | No. 512 MDA 2014 |

Appeal from the Dispositional Order entered on January 8, 2014
in the Court of Common Pleas of York County,
Juvenile Division, No. CP-67-JV-0000502-2013

BEFORE:  BENDER, P.J.E., SHOGAN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:           **FILED NOVEMBER 26, 2014**

K.R.T. (d.o.b. 1/2/96) appeals from the Dispositional Order entered

after he was adjudicated delinquent of possession with intent to deliver a

controlled substance ("PWID").[1]  We affirm.

The juvenile court previously set forth the facts underlying this appeal,

in its Order entered on November 8, 2013, as follows:

> Officer [Jason] Dibble [of the York Area Regional Police
> Department] testified that on May 5[th], 2013, he was in uniform
> and on duty, and at around 4:30 [p.m.,] when he came onto
> duty, he was informed that there was a missing child who had a
> 302 warrant.[2]  As a result of that information, [Officer Dibble]
> went to [K.R.T.'s] residence … to speak with his mother.  She

---

[1] **See** 35 Pa.C.S.A. § 780-113(a)(30).

[2] Pursuant to section 7302 of the Mental Health Procedures Act, 50 P.S.
§ 7302, a "302" involuntary commitment warrant may be issued "[u]pon
written application by a physician or other responsible party setting forth
facts constituting reasonable grounds to believe a person is severely
mentally disabled and in need of immediate treatment[.]"  **Id.** § 7302(a)(1).
In the instant case, K.R.T.'s mother submitted the application for a 302
warrant.

had given [Officer Dibble] a picture or [K.R.T.] and [] provided him with some locations where [K.R.T.] may have been [located]. It was determined that [K.R.T.] may be at an apartment complex on South Main Street in Red Lion Borough.

[Officer Dibble] went to the location, and [K.R.T.'s] mother was [] at the location as well. While [Officer Dibble] was investigating, he heard [K.R.T.'s] mother yell, "K[.], stop." As a result, [Officer Dibble] turned and saw [K.R.T.] running down the street. A very short foot pursuit commenced. [K.R.T.] [] threw his backpack and sat down on the grassy area next to the sidewalk where the [backpack] was located. [Officer Dibble] testified that the backpack was no more than ten feet from [K.R.T.'s] location. [Officer Dibble] stated that [immediately after K.R.T. had thrown the backpack and sat down on the grass, the Officer] asked [K.R.T.] why he threw the backpack, at which time [K.R.T.] stated that he was selling marijuana and that marijuana was in the backpack. [Officer Dibble then placed K.R.T. in handcuffs.]

[Officer Dibble] testified that he searched the backpack incident to arrest. He stated [that] inside the backpack were wet clothes, a cell phone, a plastic zip lock bag with ten individual packages of marijuana, and rolled up money that was located [] with the marijuana. … [Officer Dibble] also indicated [that] he was concerned for his safety. He has been involved in the military and [served] in Afghanistan[,] and is well aware of the fact that backpacks have been used to detonate devices and obviously had some concerns.

Juvenile Court Order, 11/8/13, at 3-4 (footnote added). Additionally, the juvenile court stated that another officer had testified that the 28 grams of marijuana that was found in K.R.T.'s backpack was possessed with intent to deliver. *See id.* at 5.[3]

A few days prior to the November 8, 2013 adjudicatory hearing, K.R.T. filed a Motion to Suppress the evidence of the marijuana and the inculpatory

---

[3] K.R.T. does not dispute that he possessed the marijuana with intent to sell it.

statements he made to Officer Dibble concerning the marijuana. K.R.T. averred that the warrantless search was unconstitutional and that no exceptions to the warrant requirement applied. At the adjudicatory hearing, the juvenile court denied K.R.T.'s Motion to Suppress, finding that (1) the search fell under two exceptions to the warrant requirement; and (2) K.R.T.'s inculpatory statements did not occur during a custodial interrogation, and, therefore, there was no violation of his *Miranda*[4] rights. *See* Juvenile Court Order, 11/8/13, at 6-7. At the close of the adjudicatory hearing, the juvenile court determined that the evidence established beyond a reasonable doubt that K.R.T. had committed PWID, but deferred adjudication and disposition pending a case assessment and psychological evaluation of K.R.T.

At a subsequent adjudicatory hearing on January 8, 2014, the juvenile court adjudicated K.R.T. delinquent of PWID, and imposed probation. K.R.T. timely filed a post-adjudication Motion, challenging, *inter alia*, the court's denial of the Motion to Suppress. Following a hearing, the juvenile court denied the post-adjudication Motion, after which K.R.T. timely filed a Notice of Appeal.

On appeal, K.R.T. presents the following issues for our review:

1. Whether the [juvenile] court erred in denying [K.R.T.'s] Suppression Motion related to the search of the bag in that:

   a. The search was not done incident to arrest;

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

     b. There were no exigent circumstances that required the bag to be searched; and

     c. The bag was not abandoned by [K.R.T.?]

  2. Whether the [juvenile] court erred in denying [K.R.T.'s] Suppression Motion related to the statements obtained from [K.R.T.], as [] [O]fficer [Dibble] did not give [K.R.T.] **Miranda** [warnings] and quiet time before his custodial interrogation[?]

Brief for Appellant at 4 (capitalization omitted).

Our standard of review concerning a challenge to the denial of a suppression motion is as follows:

> An appellate court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the suppression court, the appellate court is bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. [T]he appellate court is not bound by the suppression court's conclusions of law.

*In re V.C.*, 66 A.3d 341, 350-51 (Pa. Super. 2013) (citation omitted); **see also In the Interest of L.J.**, 79 A.3d 1073, 1080 n.6 (Pa. 2013) (stating that "our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations.").

K.R.T. first argues that the juvenile court erred in denying his Motion to Suppress the marijuana found in his backpack because Officer Dibble did not have a warrant to search the backpack,[5] and no exception to the warrant requirement applies. **See** Brief for Appellant at 10-14. K.R.T. contends that

---

[5] K.R.T. does not dispute that Officer Dibble had a valid 302 warrant to take K.R.T. into custody for a medical evaluation or that the arrest was valid.

(1) the search was not conducted incident to arrest; (2) there were no exigent circumstances presented in this case that required a search of the backpack; and (3) the backpack was not abandoned by K.R.T. *Id.* at 10-14.

"As a general rule, for a search to be reasonable under the Fourth Amendment or Article I, Section 8, police must obtain a warrant, supported by probable cause and issued by an independent judicial officer, prior to conducting the search." *Commonwealth v. Gary*, 91 A.3d 102, 107 (Pa. 2014). However, "[n]ot every search must be conducted pursuant to a warrant, for the Fourth Amendment bars only unreasonable searches and seizures. While a search is generally not reasonable unless executed pursuant to a warrant, the Supreme Court of the United States and [the Pennsylvania Supreme] Court have recognized exceptions to the warrant requirement." *Commonwealth v. Taylor/Mahone*, 771 A.2d 1261, 1266 (Pa. 2001) (citation omitted). One well-recognized exception is a search conducted incident to a lawful arrest. *See Commonwealth v. Stem*, 96 A.3d 407, 410 (Pa. Super. 2014). Additionally, a warrant is not required to search personal property that an individual has voluntarily abandoned. *See Commonwealth v. Sodomsky*, 939 A.2d 363, 366-67 (Pa. Super. 2007) (stating, *inter alia*, that "when an individual evidences an intent to relinquish control over personal property, he or she has abandoned a privacy interest in property and cannot object to any ensuing search of the item by police.").

In the instant case, the juvenile court determined that although Officer Dibble did not have a warrant to search K.R.T.'s backpack, the search was

legal because it fell under the search incident to arrest exception to the warrant requirement, and a warrant was not required because K.R.T. had voluntarily abandoned the backpack.

We will first address the search incident to arrest exception, which "permits an arresting officer without a warrant to search an arrestee's person and the area within his immediate control only for personal property immediately associated with the arrestee." *Stem*, 96 A.3d at 410 (citing, *inter alia*, *Chimel v. California*, 395 U.S. 752, 763 (1969) (holding that where a search is conducted pursuant to a lawful arrest, "[t]here is ample justification … for a search of the arrestee's person and the area 'within his immediate control' – construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.")). This Court has explained that the "search incident to a lawful arrest … exception[] to the warrant requirement [] does not depend upon whether there is any indication that the person arrested possesses weapons or evidence as the fact of a lawful arrest, standing alone, authorizes a search." *Commonwealth v. Rickabaugh*, 706 A.2d 826, 836 (Pa. Super. 1997) (citations and quotation marks omitted).

In the instant case, the juvenile court discussed this exception in its Pa.R.A.P. 1925(a) Opinion as follows:

> As a search incident to arrest, [Officer Dibble] could properly search [K.R.T.'s] person and containers within his immediate control. A police officer may conduct a search of an arrestee's person and the area within the arrestee's immediate control as a matter of course because of the ever-present risk in

- 6 -

an arrest situation that an arrestee may seek to use a weapon. ***United States v. Chadwick***, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). To facilitate officer safety, a search incident to a lawful arrest requires no further justification in order to be valid. ***Commonwealth v. Henry***, 358 Pa. Super. 306, 311, 517 A.2d 559, 564 (1986).

In the instant matter, [] [O]fficer [Dibble] testified that the backpack was no more than ten feet from [K.R.T.] at the time it was searched. The Officer also testified that he was concerned for his safety based on his military background and his familiarity with backpacks having been used to carry explosive devices to be detonated remotely. The [juvenile c]ourt recognizes that the backpack lies in a grey area as it relates to the area that may be searched. However, the [c]ourt found the Officer's testimony compelling regarding his experiences in the military as it relates to backpacks being used as explosive devises. Moreover, we now live in a different time when it is common to see backpacks being used as weapons, *e.g.*[, the] Boston Marathon [bombing].[6] [K.R.T.], while being chased, threw his backpack[,] thereby giving [O]fficer [Dibble] further concern regarding the potential contents therein. This heightened his concerns regarding his safety. Therefore, the [juvenile c]ourt found that the backpack[,] which was located within ten feet of the Officer[,] posed a potential danger to him and others who were at the arrest scene.

Juvenile Court Opinion, 4/10/14, at 2-3 (footnote added); ***see also*** N.T. (adjudicatory hearing), 11/8/13, at 43-44.

We must defer to the juvenile court's credibility assessment regarding Officer Dibble's testimony at the adjudicatory hearing that he had reason to be concerned for his and the public's safety regarding the unknown contents of K.R.T.'s backpack, based on the Officer's prior experience with concealed explosive devices while serving with the military in Afghanistan, and the

---

[6] The Boston Marathon bombing on April 15, 2013, wherein a bomb concealed inside a backpack was remotely detonated, occurred less than one month prior to the incident involved in this case.

then-recent Boston Marathon bombing. *See In the Interest of L.J., supra* (stating that "our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations.").

Moreover, the safety concern articulated by Officer Dibble distinguishes the instant matter from the case that K.R.T. relies upon in support of his argument: *Taylor/Mahone*, 771 A.2d at 1271-72 (where the police had arrested the defendant and his codefendant while executing a search warrant of a convenience store, placed the men in handcuffs, and then discovered narcotics in two coats located ten feet away from the men, holding that this evidence was not admissible under the search incident to arrest exception because "the search of the two coats extended beyond the area within [the defendants'] 'immediate control[,]'" and "[t]here is no indication in the record that the police had any reason to believe that the men would immediately attempt to secure a weapon or destroy contraband contained in the coats."). Unlike the police in *Taylor/Mahone*, here, Officer Dibble articulated a specific reason why the backpack was a potential safety concern, and, as noted above, the juvenile court credited Officer Dibble's justification for why he thought the circumstances necessitated a protective search of the backpack. *Cf. Taylor/Mahone*, 771 A.2d at 1271 (stating that "[w]hile the coats did contain contraband, we find that the circumstances in the present case did not necessitate a search of the coats."). Accordingly, the juvenile court properly determined that the search incident to arrest exception was satisfied in this case.

Moreover, we agree with the juvenile court's determination in its Pa.R.A.P. 1925(a) Opinion that "[a]ssuming that the search of the backpack was not a valid search incident to arrest, it would then fall within the parameters of abandoned property." Juvenile Court Opinion, 4/10/14, at 4. The juvenile court reasoned as follows:

It is well settled that no one has standing to complain of a search or seizure of property that he has voluntarily abandoned. **Abel v. United States**, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668 (1960)[; **see also Sodomsky**, 939 A.2d at 367 (stating that "a legitimate expectation of privacy is absent where an owner or possessor meaningfully abdicates his control, ownership, or possessory interest in his personal property." (citation and quotation marks omitted)]. Abandonment is primarily a question of intent, and intent may be inferred from words spoken, acts done, and other objective facts. **Commonwealth v. Shoatz**, 469 Pa. 545, 553, 366 A.2d 1216, 1220 (1976) [(where the police responded to a report that the defendant and his two coconspirators were acting suspiciously and appeared to be readying to burglarize a store, and the men fled upon seeing the police and dropped two briefcases, holding that the warrantless search of the briefcases, which contained illegal weapons, was lawful because the men had voluntarily abandoned the property); **s**]**ee also Commonwealth v. Johnson**, 431 Pa. Super. 291, 636 A.2d 656 (1994) (finding that defendant's placement of a bag of crack cocaine in a tree on public property and standing 10-12 feet away constituted a conscious attempt to distance himself from the bag in the event of police intervention, and accordingly resulted in the loss of a reasonable expectation of privacy in the bag). Police pursuit does not of itself render abandonment involuntary. **United States v. Edwards**, 5th Cir. 1971, 441 F.2d 749 (1971).

Here, [K.R.T.] voluntarily threw the backpack while being pursued by [] Officer [Dibble]. By throwing the backpack and continuing to flee, albeit for a short period of time, it can reasonably be inferred that [K.R.T.] was voluntarily relinquishing his control and any privacy interest he had in the backpack.

Juvenile Court Opinion, 4/10/14, at 4; *see also* N.T. (adjudicatory hearing), 11/8/13, at 44 (wherein the juvenile court judge found that "[i]t's clear that [K.R.T.] intended to relinquish possession [of the backpack] by throwing it when running from the [O]fficer."). We determine that the juvenile court's findings are supported by the record and the law, and discern no error in the court's conclusion that the marijuana seized from K.R.T.'s backpack was admissible even though Officer Dibble did not have a warrant to search the backpack.

In his second issue, K.R.T. argues that the juvenile court erred in failing to suppress his inculpatory statements because, according to K.R.T., he was in custody when Officer Dibble questioned him as to why he threw the backpack,[7] and the Officer never read K.R.T. his *Miranda* rights. *See* Brief for Appellant at 15-17. K.R.T. maintains that Officer Dibble had placed him in custody at the moment that K.R.T. had stopped for the Officer while fleeing, after the Officer yelled to K.R.T., "Stop, police." *Id.* at 15. K.R.T. contends that a reasonable person would not have felt free to leave under these circumstances, and, therefore, the questions that Officer Dibble asked K.R.T. occurred during a custodial interrogation, requiring *Miranda* warnings. *Id.* at 16.

---

[7] K.R.T. also points out that after Officer Dibble placed K.R.T. in handcuffs and found the marijuana in the backpack, the Officer asked him what he was doing with the drugs, in response to which K.R.T. admitted he was selling it. *See* Brief for Appellant at 16-17; *see also* N.T., 11/8/13, at 19-20.

This Court has stated as follows concerning custodial interrogations of juveniles:

> To safeguard an uncounseled individual's Fifth Amendment privilege against self-incrimination, suspects subject to custodial interrogation by law enforcement officers must be warned that they have the right to remain silent, that anything they say may be used against them in court, and that they are entitled to the presence of an attorney. Juveniles, as well as adults, are entitled to be apprised of their constitutional rights pursuant to *Miranda*. If a person is not advised of his *Miranda* rights prior to custodial interrogation by law enforcement officers, evidence resulting from such interrogation cannot be used against him. A person is deemed to be in custody for *Miranda* purposes when [he] is physically denied of his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation.

*In re C.O.*, 84 A.3d 726, 731-32 (Pa. Super. 2014) (citations and quotation marks omitted). "Interrogation is defined as police conduct calculated to, expected to, or likely to evoke an admission." *Id.* at 732 (citation and brackets omitted).

In denying K.R.T.'s Motion to Suppress his inculpatory statements, the juvenile court reasoned at the adjudicatory hearing as follows:

> With respect to the statements made by [K.R.T.], it is clear that those statements were not a part of custodial interrogation. [O]fficer [Dibble] merely asked [K.R.T.] why he threw the bag in question. This was not intensive questioning by the [O]fficer, and [K.R.T.] had merely stated that it contained the drugs in question.

N.T., 11/8/13, at 44. The juvenile court's determination is supported by the record, which reveals that Officer Dibble testified that K.R.T.'s admission that he had marijuana in his backpack was spontaneous and not specifically

- 11 -

responsive to the Officer's question as to why K.R.T. threw the backpack. *Id.* at 15, 18. Moreover, Officer Dibble testified that he had asked K.R.T. why he threw the backpack for safety purposes, not with the intent to elicit incriminating evidence from K.R.T, and the juvenile court credited the Officer's testimony in this regard. *Id.* at 18, 23; *see also* Juvenile Court Opinion, 4/10/14, at 3. Accordingly, we conclude that K.R.T.'s spontaneous admission was voluntary, and did not occur during a custodial interrogation. Therefore, *Miranda* warnings were not required, and the juvenile court properly refused to suppress K.R.T.'s inculpatory statements.

Based upon the foregoing, we conclude that the juvenile court properly denied K.R.T.'s Motion to Suppress, and we therefore affirm the Dispositional Order entered following K.R.T.'s adjudication of delinquency for PWID.

Dispositional Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/26/2014